IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

      v.                                     25-CR-189

JOSE FRANCISCO CARDOSO TEHOVNIK,

           Defendant.

_____

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, respectfully files this response to the defendant's sentencing memorandum.  The government intends to ask the Court to impose a sentence within the Guidelines range of 151- to 188- months of imprisonment, and to reject the defendant's arguments for a below-guidelines sentence.

## PRELIMINARY STATEMENT

On October 29, 2025, the defendant pled guilty to one count of Receipt of Child pornography, in violation of 18 U.S.C. §2252A(a)(2)(A) & 2252A(b)(1).  As part of the plea agreement, the defendant admitted to meeting a 16-year old girl online and pursuing a sexual relationship with the minor.  The defendant admitted to traveling on two separate occasions to the Buffalo area to meet the minor, in secret, and engage in sexual intercourse.  The defendant admitted to arranging to meet the minor once she finished high school for the day

on June 4, 2024.  The defendant met the minor child outside of her high school in a rented car, and then he disappeared with her, only to be caught the following day in New Jersey. The defendant's admitted conduct, set forth in the plea agreement and in more detail in the PSR, merits a substantial sentence.  Moreover, while the defendant has certainly lived a difficult life, and overcome substantial obstacles, those facts do not take away from the brazen wrongfulness of what he did in this case.  The defendant essentially abducted a child from her high school and left town, without so much as word to her family or friends.  The Guidelines calculation reflects the wrongs committed by the defendant and the mitigation set forth by the defendant, while compelling, does not support a sentence outside of the Guidelines range, let alone a sentence less than one third the top of the Guidelines.  In this case, as in the overwhelming majority of cases, a sentence within the Guidelines range is reasonable, appropriate, and strongly supported by the particular facts.

## **SENTENCING PROCEDURE**

The United States recognizes that since *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are advisory rather than statutorily mandated. However, when imposing a sentence, the Court is required to consider the guidelines but must fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). As noted by the Supreme Court, the guidelines have a "real and pervasive effect … on sentencing" and therefore, "are not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016).

Under Section 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. *See United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress .... It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to consider."). The sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A court that imposes a sentence outside the applicable advisory guidelines range must do so on notice to the parties and must state "with specificity" both at sentencing and in the written judgment and commitment order its reasons for doing so.  18 U.S.C. § 3553(c).

While this Court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2465 (2007), neither are sentencing judges "free to ignore the Guidelines, or to treat them merely as a 'body of casual advice.'"  *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (quoting *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005)); *see also United States v. Jones*, 531 F.3d 163, 174 (2d Cir. 2008) ("respectful consideration of the Guidelines . . . necessarily channels district court sentencing discretion"). Further, the Second Circuit has observed that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be [upheld as] reasonable in the particular circumstances."

*United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006). *See also United States v. Eberhard*, 525 F.3d 175, 179 (2d Cir. 2008).

In determining whether the § 3553(a) factors support the sentence, the Court "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597 (2007). In that regard, "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. *See Cavera*, 550 F.3d at 190-91. The Court must begin its' "analysis with the Guidelines and remain cognizant of them throughout the sentencing process [because] … the Guidelines are the 'framework for sentencing' and 'anchor … the district court's discretion.'" *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016). If a non-Guidelines sentence is warranted, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S. Ct. at 597. As the Second Circuit recently reiterated, a "*major* variance from the advisory Guidelines range must be supported by a 'more significant justification than a minor one.' … [and] District judges 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance…'" *United States v. Ramos*, No. 24-293, 2026 WL 517934 (2d Cir. Feb. 25, 2026) (Summary Order) (internal citations omitted) (vacating and remanding for re-sentencing where court imposed a sentence double the top of the Guidelines range without adequately explaining upward variance).

4

**ARGUMENT**

The defendant, a 21-year-old man at the time of the offense, met a teenaged high school student on the internet.  Over a period of weeks he induced, enticed, coerced and convinced this high school student to begin a romantic relationship. During this period, the defendant received images of the minor that constituted child pornography.  The defendant was aware of the victim's age when he concocted his plan to abduct her from Western New York and live with her in Florida.  In a series of messages with an unknown acquaintance, the defendant shared a photo of the minor victim, which prompted the following exchange (PSR ¶: 33):

| U/M | Dang bro shes way too young / She like 12 bro |
|---|---|
| TEHOVNIK | Nah she is not / 16 |
|  |  |
| U/M | Get yo girl bro take her to florida and live with you lol. [*sic*] |
| TEHOVNIK | My plan bro |
|  |  |

In April 2024, the defendant booked a flight, reserved a hotel room and convinced the minor victim to meet him after school.  The defendant brought the minor to the hotel room, where they engaged in sexual intercourse and spent the night.  The minor victim's family had no idea where she was.  Ultimately, the minor victim returned home the following day.

The defendant knew what he did was wrong and knew what he did was illegal.  Several days after convincing the victim to spend the night at the hotel with him, the defendant sent a series of messages to the victim's parents.  In one message, defendant stated that he knew how old the victim was and "that is why I said I understand as parents you guys will care and protect her. That is why I don't want to jump cables. I would rather her to turn 18 then having

to a relationship now."  Through these communications, we know that the defendant was aware that the victim was a minor, that she was impressionable, and that her family was "extremely worried about her." *See* PSR ¶ 27.

In June 2024, the defendant again booked a flight to the Buffalo area and rented a car. This second trip demonstrates he was setting his plan in motion, to take the minor victim from her family and live with her in Florida.  The defendant exchanged a series of text messages with the victim while she was at school.  The defendant drove to the victim's school, picked her up, and the two of them drove south together.  Once again, the victim's family was terrified and contacted law enforcement to help find their missing child.  Ultimately, after hours of diligent work and legal process from law enforcment, the defendant was found with the victim in New Jersey.

The defendant, no doubt, has suffered and overcome substantial hardships.  Defendant claims that he engaged in the conduct described above because he was "anxious … depressed … isolated" and the "decision to pursue this relationship did not reflect someone who had a longtime interest in underage women" and "does not show [he] will engage in similar behavior in the future."  These arguments fail to connect the defendant's background with the offense behavior.  The defendant did not commit this offense impulsively, or on a whim.  The defendant spent months grooming, inducing, coercing, convincing, and planning.  The defendant sent photo of the victim to a friend in February 2024, and the friend believed her to be 12 years old because she looked so young.  The defendant crafted his plan as early as February to "take her to florida."  The defendant developed an objective to prey on a

vulnerable and impressionable high school student, and then took many steps towards accomplishing that objective.

The defendant describes a series of difficult family circumstances, and abuse, that he has endured and tried to overcome. The defendant also reports that he now has an engaged and supportive adoptive family.  However, the defendant fails to appropriately acknowledge the harm he caused to the family on the other side of his criminal conduct.  After learning that the victim's family was "extremely worried" about her after the first time he disappeared with the victim, the defendant continued to communicate with her.  In June, the defendant took the victim away from her worried family and attempted to disappear with her to live in Florida.  Thankfully, the defendant failed to achieve his objective, but nevertheless the harm remains.

Defendant claims that the minor victim was "the answer" to his own feelings of depression and isolation.   This framing focuses on the defendant without any recognition of the vulnerability and impact on the victim of his conduct.  The defendant acknowledges that he learned that MV-1 may also have felt depressed, isolated and anxious.  Instead of trying to help, or allowing her family to help her, the defendant preyed on these vulnerabilities to satisfy his own urges.  Simply put, he used what the victim told him to groom her and use her.  Given the defendant's background and experience, he should have known better.

Given all of the above, there is no good reason, let alone a compelling reason, to justify a below-guidelines sentence less than 50 percent of the bottom of the Guidelines range

requested by the defendant.  In this case, the defendant demonstrated extensive planning and preparation to commit a serious crime against a minor victim and her family.  Had he been successful, he would have robbed the victim of her freedom, her final years of high school, the end of her childhood and her relationship with her family and her community.  Had he been successful, he would have robbed the victim's family of their daughter.  The Court will certainly and appropriately consider the defendant's extensive mitigation arguments.  But equal weight must also be given to the defendant's conduct, and the intended and realized harms of that conduct.

**CONCLUSION**

For the foregoing reasons, the Court should impose a sentence of between 151- and 188- months imprisonment, to be followed by a term of supervised release.

DATED:      Buffalo, New York, March 26, 2026.

MICHAEL DIGIACOMO
United States Attorney

BY:      s/ *EVAN K. GLABERSON*
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5871
Evan.Glaberson@usdoj.gov